CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
February 02, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JARVIS JUWAN JACKSON, ) | |
|    Plaintiff, ) | Civil Action No. 7:24-cv-00147 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| COLLINS, *et al.,* ) | Chief United States District Judge |
|    Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Jarvis Juwan Jackson, a prisoner acting *pro se*, brought a lawsuit alleging violations of his constitutional rights when he was housed at Red Onion State Prison. (Compl., Dkt. No. 1.) Jackson alleges that the two defendants, Officer Collins and Officer Robbins, violated his constitutional rights by failing to protect him from an attack by a fellow inmate at Red Onion. Jackson also alleges a claim for civil conspiracy against Officer Collins. Jackson is currently housed at Wallens Ridge State Prison, and he has filed a motion to transfer facilities (Dkt. No. 42), which will be denied for the reasons stated in this opinion.

Also before the court is defendants' motion for summary judgment. (Dkt. No. 55.) Defendants argue, in part, that Jackson did not exhaust his administrative remedies. (Dkt. Nos. 55, 56.) Jackson has responded to the motion (Dkt. No. 59), and the motion for summary judgment will be granted.

I.  BACKGROUND

**A.  Plaintiff's Complaint**

In a verified complaint, plaintiff alleges that on February 13, 2023, he was working in the A-5 pod at Red Onion as a pod feeder. Jackson was standing on the top tier in front of cell 522 waiting for the correctional security officer to open the cell doors so the inmates could set their

trays out for collection. Plaintiff collected those trays and went to cell 521. When Jackson bent down to pick up those trays, another inmate hit him with a weapon and cut him from his ear to his eye. Jackson tried to defend himself. (Compl. ¶¶ 1–3.) As this was happening, Officer Robbins[1] used OC spray on Jackson and the other inmate. Robbins instructed them to stop fighting and get on the floor. (*Id.* ¶ 3.) The other inmate continued to cut Jackson. (*Id.* ¶ 4.)

Officer Collins arrived in the A-5 pod with his K-9 and ordered the other inmate to stop fighting or he would release the dog. The inmate did not comply and continued to cut Jackson. Collins did not release the dog. (*Id.* ¶¶ 4–5.) Ultimately, the inmate threw away his weapon and security staff placed him in handcuffs. Security transferred plaintiff to the medical unit and then to Norton Community Hospital. (*Id.* ¶ 5.) Jackson received over 50 stitches to repair injuries to his face, neck, nose, and arm. (*Id.* ¶ 6.)

Plaintiff alleges that he filed a written complaint and a regular grievance pertaining to this incident with the Red Onion Grievance Office. Unit Manager Day gave a response to the written complaint. (*Id.* ¶ 7.)

Jackson alleges that the defendants acted with deliberate indifference when they failed to intervene before Jackson sustained serious injuries. (*See id.*) Jackson also alleges that Collins engaged in a conspiracy with K-9 in violation of the Eighth Amendment. He requests $200,000 in compensatory damages and $100,000 in punitive damages.

**B. Motions to Transfer**

Jackson filed two motions to transfer that were previously denied by the court. (Dkt. Nos. 30, 40.) In both orders, the court observed that Jackson had been transferred to a different

---

[1] Plaintiff refers to this defendant as Robinson in the complaint, but he has been identified as Officer Robbins.

2

facility, Wallens Ridge; the defendants work at Red Onion and have no authority to transfer him; and the defendants are not the ones allegedly threatening plaintiff at Wallens Ridge. (*See id.*)

In his newest motion to transfer, Jackson asserts that the defendant he refers to as Robinson was present at his pod. Jackson states that the pod camera will show and prove that Robinson (Robbins) was "in my same pod that I'm currently in walked in the pod and told the inmate in cell 210 that he's going to get me killed before I make it home." (Dkt. No. 42.)

**C. Facts in Support of Defendants' Motion for Summary Judgment**

In support of their motion for summary judgment, defendants submitted the affidavit of T. Still, the Institutional Ombudsman at Red Onion. (Dkt. No. 55-1.) Robbins and Collins also filed affidavits. (Dkt. Nos. 55-2, 55-3.)

**1. Incident on February 13, 2023**

Collins is a former K9 corrections officer who was previously employed at Red Onion. Robbins is a corrections officer employed at Red Onion.

On February 13, 2023, Officer Robbins responded to the A-5 pod due to an inmate fight involving Jackson. (Robbins Aff. ¶ 4.) Officer Robbins entered the pod and observed two inmates fighting. He also observed a sharpened weapon. (*Id.* ¶ 5.) Multiple verbal orders were given to Jackson and inmate D. Vasquez to stop fighting. Officer Robbins administered a one-second burst of OC spray from an MK-4 to stop the inmates from fighting. The spray was not effective, and the inmates continued fighting. (*Id.* ¶ 6.)

After the OC spray was administered by multiple officers, K9 officers responded to the scene. (*Id.* ¶ 7.) Officer Collins and his assigned canine, Newt, responded to A-5 pod for the assault. (Collins Aff. ¶ 4.) When Collins arrived, he observed Jackson and Vazquez in a physical altercation on the top tier in front of cell A-521. Collins was not aware at that time that

3

any weapon was involved in the altercation. (*Id.* ¶ 5.) Officer Collins gave several warnings of "State K9, stop fighting or I will release the dog," while running up the steps to the top tier. (Collins Aff. ¶ 6.)

Officer Collins gave a final warning, but the inmates continued to fight. (Collins Aff. ¶ 7.) Collins deployed his canine, Newt, on Jackson's right leg, but Newt did not engage and both inmates continued to fight. (Collins Aff. ¶ 8.) Another officer, Officer Lewis, informed Collins that Vazquez had a weapon. Collins redeployed his assigned canine, but the canine once again failed to engage. Collins requested additional K9 assistance via radio, and another K9 officer responded. At that time, both inmates stopped fighting and laid on the ground. Vazquez threw a weapon off the top tier. (*Id.* ¶ 9.) Officer Collins provided security for responding staff while the inmates were restrained. (*Id.* ¶ 10.) Jackson was taken to medical care. Collins took photos of Jackson, Jackson's clothing, and the weapon. (*Id.* ¶ 11.)

Officer Collins' assigned canine, Newt, was certified canine at the time of the incident. Newt and Collins successfully completed the Basic Patrol/Police Service Canine School and became certified as a Police Service/Patrol K-9 Team at the Canine Training/Operations Unit on December 29, 2022. (Collins Aff. ¶ 12, Encl. A.) The incident in this lawsuit was the first incident to which Collins and Newt responded since being certified. (Collins Aff. ¶ 13.)

### 2. Facts relevant to exhaustion of administrative remedies

Pursuant to Operating Procedure 866.1, Offender Grievance Procedure, grievances are to be submitted within 30 calendar days from the date of the incident. Before filing a regular grievance, the inmate must demonstrate he made a good faith effort to resolve his complaint. This can be done by submitting a written grievance form to the appropriate department head. Prison staff should respond to a written complaint within 15 calendar days. (Still Aff. ¶ 6.) A

4

response should be given within 15 calendar days to ensure that it is provided prior to the expiration of the 30-day time period. (*Id.*)

All Virginia Department of Corrections inmates are oriented to the Offender Grievance Procedure when they are received into VDOC, including at Red Onion. Jackson was assigned to Red Onion from September 5, 2018, to February 26, 2024. Jackson's grievance file demonstrates that he utilized the grievance procedure on several occasions at Red Onion. (Still Aff. ¶ 19.)

On February 22, 2023, Jackson submitted a written complaint, ROSP-23-INF-000740, complaining that, on February 13, he was attacked and assaulted by inmate with a weapon. Jackson alleged that while he was trying to defend himself, he was sprayed by OC while the inmate refused to stop stabbing him, and the K9 Officer refused to let the dog do its job by stopping the inmate from continuing to harm him. Further, Jackson alleged that staff did nothing to stop the altercation. The Written Complaint was received by Red Onion's Grievance Department on March 1, 2023. Unit Manager Day responded on March 3, 2023. (Still Aff. ¶ 12, Encl. B.)

Jackson also wrote an unsigned, undated regular grievance stating that he was attacked on February 13 by an inmate with a weapon, resulting in stab wounds and cuts. Jackson alleged that when he was trying to defend himself, he was sprayed by OC, the inmate continued stabbing him, and the K9 Officer did not let the dog do its assigned job by stopping the other inmate. On April 10, 2023, Institutional Ombudsman C. Vilbrandt rejected the regular grievance during the intake process because the filing period had expired. (Still Aff. ¶ 13, Encl. C.) Jackson did not appeal the intake decision. (Still Aff. ¶ 14.) If an inmate disagrees with the decision on a regular grievance, he has 5 calendar days to seek review with the Regional Ombudsman. (*Id.* ¶ 15.)

5

On March 11, 2024, after being transferred to Wallens Ridge, Jackson submitted a written complaint, WRSP-24-INF-01822, complaining that he asked for copies of the pictures taken after he was cut and stabbed at Red Onion. The complaint was received on March 12, and a response was provided by PST Sloan on March 25, 2024. A note by T. Still on April 10, 2024, stated that any photos would be retained in Intel and available by subpoena. (Still Aff. ¶ 16, Encl. D.) Jackson did not file a regular grievance on this issue. (Still Aff. ¶ 17.)

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in the pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate the existence of specific, material facts that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248.

**B. Exhaustion**

The Prison Litigation Reform Act (PLRA) provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A defendant has the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The record in this case shows that Jackson initiated two written complaints and one regular grievance regarding his allegations about the February 13, 2023 incident. Jackson did not pursue either written complaint by following up with a timely regular grievance. The court also notes that the second written complaint was a request for medical photos and did not directly recount the allegations in this lawsuit. As for the regular grievance, it was rejected at intake as being untimely filed, and Jackson did not appeal the intake decision. Accordingly, Jackson did not exhaust his administrative remedies. As the defendants have made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to

the plaintiff. *Draper v. Ohai*, Civil Action No. 7:23-cv-00248, 2025 WL 270051, at *5 (W.D. Va. Jan. 22, 2025) (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)).

The PLRA contains its own textual exception to the mandatory exhaustion requirement, as the requirement hinges on the "availability" of administrative remedies. An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Supreme Court has identified three scenarios where an administrative process is considered unavailable: (1) the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative process is so opaque that "no ordinary prisoner can discern or navigate" through the process; and (3) the "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

In response to the motion for summary judgment, plaintiff argues that administrative remedies were not available to him. Jackson contends that when his regular grievance was rejected as untimely, remedies were unavailable to him because he would only be challenging the intake decision, not any resolution of the merits of his claim. (Dkt. No. 59 at 3.) Jackson also argues that the rejection of his complaint asking for medical photos, stating that they could be obtained with a subpoena, shows that administrative remedies are unavailable. However, the PLRA requires exhaustion "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001). The rejection of a grievance as untimely does not render the grievance system unavailable because full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. *Woodford*, 548 U.S. at 92–94. "[T]he Supreme Court has emphasized 'it is the prison's requirements, and not the PLRA,

8

that define the boundaries of proper exhaustion.' Thus, to satisfy the PLRA, a detainee must fully and properly comply with the specific procedural requirements of the incarcerating facility." *Mitchell v. Russell*, 3:24-cv-00185-KGB-JJV, 2025 WL 2557189, at *2 (E.D. Ark. Mar. 4, 2025) (citing and quoting *Jones*, 549 U.S. at 218).

Jackson cites *Smith v. Andrews*, 75 F.4th 805 (8th Cir. 2023), in support of his exhaustion argument. In *Smith*, the district court declined to determine if administrative remedies were unavailable because of procedural defects in the prisoner plaintiff's efforts to exhaust. The Eighth Circuit remanded because if "the prison's administrative remedies were unavailable to him, then any procedural defects are immaterial." *Smith*, 75 F.4th at 809. In this matter, however, there are no issues of fact pertaining to the availability of administrative remedies. As a result, Jackson's procedural defects *are* material. *Smith* is not persuasive for this reason.

Finally, Jackson argues that defendants are either concealing or have destroyed evidence of his injuries by their denial of his complaint requesting pictures of his injuries. (Dkt. No. 59 at 5–6.) This argument is not relevant to exhaustion or whether administrative remedies were available to Jackson.

For these reasons, the court will grant summary judgment in favor of defendants based on Jackson's failure to exhaust administrative remedies.

**C. Motion to Transfer**

As the court did previously, the court construes Jackson's motion to transfer as a motion for injunctive relief. (*See* Dkt. Nos. 30, 40.) *See, e.g.*, *Campbell v. Smith*, C.A. No. 0:08-3668-PMD-PJG, 2009 WL 31119795, at *1 (D.S.C. Sept. 28, 2009) (explaining that a "request for a transfer to a different penal institution" is "essentially" a request for preliminary injunctive relief). A plaintiff seeking a preliminary injunction must establish all four of the following

9

elements: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In the context of the administration of a state prison, injunctive relief should be granted only in compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). The judiciary grants "wide ranging deference" to prison administrators on matters within their discretion. *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

Jackson is not likely to succeed on the merits of his claims because, for the reasons stated in this opinion, his suit is barred based on his failure to exhaust administrative remedies. Moreover, plaintiff's contentions in his request for a transfer are not related to the allegations in this lawsuit. While a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also Brooks v. Zorn*, No. 2:22-cv-00739-DCN-MHC, 2024 WL 1571688, at *6 (D.S.C. Apr. 11, 2024) (denying motion that "seeks injunctive relief unrelated to his complaint against non-parties to this lawsuit") (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

Accordingly, the motion to transfer will be denied.

III.  CONCLUSION

The court will issue an order granting defendants' motion for summary judgment, denying plaintiff's motion to transfer, and dismissing this matter in its entirety.

Entered:  February 2, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge